62 N.J. Super. 395 (1960)
163 A.2d 221
MARTIN LEVIN AND ALAN SAGNER T/A LEVIN-SAGNER HOMES, A PARTNERSHIP, PLAINTIFF,
v.
THE TOWNSHIP OF LIVINGSTON, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided June 30, 1960.
*398 Mr. Louis R. Lombardino, attorney for plaintiff.
Mr. Louis Bort, attorney for defendant.
COLLESTER, J.S.C.
The plaintiff brings this action in lieu of prerogative writs to set aside and adjudge invalid an ordinance to amend an ordinance regulating the opening and improvement of streets adopted by the Township of Livingston on March 21, 1960. The pertinent facts are as follows:
The plaintiff is a partnership engaged in the business of land development and the construction of residential homes. Plaintiff prepared a map or plat for a major subdivision of 213 homes, including a layout of streets to be constructed in such development, to be known as Cherry Hill, and having followed the procedure established by the land subdivision ordinance of the Township of Livingston (hereafter referred to as the subdivision ordinance), on November 20, 1956 received preliminary approval from the Livingston Planning Board. Thereafter, on January 10, 1957 preliminary approval of said plat was granted by the Livingston Township Committee.
Under section 23 of the subdivision ordinance the approval of the preliminary plat conferred upon the plaintiff the following rights for a period of three years from the date of such approval.
"(a)  That the general terms and conditions under which such preliminary approval was granted will not be changed.
(b) That the subdivision may submit on or before the expiration date the whole or any part or parts of said plat for final approval."
Thereafter a resolution of the planning board, adopted December 15, 1959, and a resolution of the township committee adopted December 21, 1959, extended the period of preliminary approval to January 10, 1961. Both resolutions provided that "during said time the general terms and conditions upon which the preliminary approval was granted shall not be changed."
*399 On January 18, 1960 a portion of the Cherry Hill subdivision known and designated on a map or plat as "Cherry Hill, Section 2," pursuant to the procedures set forth in the subdivision ordinance, received final approval from the township committee, having on November 17, 1959 received similar final approval from the planning board. This section consisted of approximately 31 lots. Plaintiff, prior to such approval, had installed all of the required utilities for this tract, had installed curbs on a portion of the streets laid on such plat, and had posted a performance bond with the municipality, pursuant to the provisions of the subdivision ordinance whereby it guaranteed to construct eight-inch penetration macadam streets which on said date were required by a municipal ordinance "regulating the opening and construction of streets, and relating to the acceptance of streets," which had been adopted by the township on December 4, 1939.
On May 8, 1956 a portion of another subdivision developed by the plaintiff known as "Collins Estates, Section 1B" and consisting of 71 residential lots received final approval from the township committee. Apparently no performance bond was required or filed by the plaintiff relating to such section. Here plaintiff has installed part of the required curbing for the streets to be constructed in such tract.
On the dates of preliminary approval of the Cherry Hill plat, final approval of Cherry Hill, Section 2 plat, and final approval of Collins Estates, Section 1B plat, the municipal ordinance relating to the opening, improvement and acceptance of streets contained specifications requiring newly constructed streets to be paved with eight-inch penetration macadam pavement.
On March 21, 1960 the township committee amended said street construction ordinance and provided that the specifications for newly constructed streets would require a bituminous concrete pavement (referred to as Ordinance No. 6-1960). Said ordinance further provided that it should not apply to "such streets or roads heretofore laid out and now in the *400 course of construction, provided, however, that the curbs have been installed and the base course laid."
The plaintiff contends that said ordinance operates retroactively to deprive plaintiff of his rights granted to him under the land subdivision ordinance of the municipality and the Municipal Planning Act (N.J.S.A. 40:55-1.1). He contends that the specifications for the construction of roads in a subdivision come within "the general terms and conditions" upon which preliminary approval of the plats was granted; that the final subdivision approvals granted with respect to Cherry Hill, Section 2, and Collins Estates, Section 1B, gave to the plaintiff certain vested and fixed rights which Ordinance No. 6-1960 deprives him of contrary to law. Plaintiff contends that insofar as his subdivisions are concerned Ordinance No. 6-1960 is invalid and should be set aside.
The defendant municipality contends that Ordinance No. 6-1960 does not deprive plaintiff of any vested or fixed rights and that it is a reasonable and valid ordinance properly enacted within the police powers of said municipality.
In a consideration of the issues raised in this action it is necessary that we consider the same in the light of the purposes and objectives of the Municipal Planning Act (N.J.S.A. 40:55-1.1) and the land subdivision ordinance of the Township of Livingston. The statute has in view the physical development of a community and its environs in relation to its social and economic well-being for the fulfillment of the rightful common destiny, according to a "master plan" based on careful and comprehensive studies and surveys and studies of present conditions and the prospects of future growth of the municipality and embodying scientific teachings and creative experience. The master plan has been described as a long-term general outline of projected development. Angermeier v. Borough of Sea Girt, 27 N.J. 298 (1958). The statute authorizes a municipality by ordinance to provide for the regulation of subdivisions within the municipality (N.J.S.A. 40:55-1.14) and gives *401 to the municipality the fullest and most complete powers possible concerning the subject matter of municipal planning. (N.J.S.A. 40:55-1.3)
The land subdivision ordinance adopted by the defendant municipality under the authority of the statute states that its purpose is to provide rules, regulations and standards to guide land subdivision in order to promote the public health, safety, general welfare and convenience.
The objectives of the statute and the ordinance must not be confused with other powers granted to a municipality, such as the right to make, amend, repeal and enforce ordinances to provide for local improvements such as the establishing, changing, grading or paving of streets. N.J.S.A. 40:56-1.
We are primarily concerned in the instant case with the subject of municipal planning as distinguished from that of making or the regulation of local improvements.
Under the terms of the land subdivision ordinance, when a land developer desires to develop a tract of land he causes to be prepared a preliminary plat of the area which is presented to the planning board for approval, and, if approved, is thereafter referred to the governing body for its consideration and approval. Upon securing such approvals the ordinance provides that the preliminary approval of the plat confers upon the subdivider for a period of three years from the date thereof the following rights:
"(a) That the general terms and conditions under which such preliminary approval was granted will not be changed.
(b) That the subdivider may submit on or before the expiration date the whole or any part or parts of said plat for final approval." (Italics mine.)
Thereafter, during said three-year period the developer may present a final plat of the subdivision or a part thereof to the planning board for its consideration and approval and upon receiving such approval the final plat is referred to the governing body for its consideration and approval. Upon *402 approval thereof the final plat is filed with the Office of the Register of Essex County.
Final approval of a plat will not be made unless certain improvements required by section 36 of the ordinance have been completed or a performance guarantee is furnished in an amount equal to the cost of construction of such improvements. In the latter event the subdivider must fully complete the required improvements before a certain date to be fixed by the planning board, which date shall in no case be later than three years from the date of approval of the final plat unless extended by the governing body for an additional period not to exceed three years.
Section 36, above referred to, requires that prior to granting of final approval the subdivider must have installed or shall have furnished the performance guarantee for the installation of all streets, curbs, gutters, drainage and drainage structures in accordance with the "applicable standard specifications" of the township, together with street name signs, shade trees, monuments, connections for water supply, fire hydrants, sanitary sewers and other requirements listed therein. Such installations must be made in accordance with the provisions of ordinances of the municipality (other than the land subdivision ordinance) or applicable statutes.
In the case sub judice the plaintiff claims that the specifications contained in the street construction ordinance in effect on January 10, 1957, the date of preliminary approval of the Cherry Hill plat, namely, a specification that street pavement shall be composed of eight-inch penetrating macadam, is one of the general terms and conditions under which such preliminary approval was granted and that it could not be changed by the municipality during the period of preliminary approval (three years, plus the additional one year granted by the resolution of the governing body adopted December 21, 1959).
In determining this issue it is observed that a preliminary plat is defined under section 5(m) of the ordinance as follows:
*403 "The preliminary map indicating the proposed layout of the subdivision which is submitted to the Planning Board for its consideration and tentative approval, and meeting the requirements of Section 34 of this ordinance."
An examination of section 34, which also by its terms includes the provisions of sections 37 to 51, inclusive, indicates that nowhere under said sections is there any reference to the specifications to be required in the construction of the pavement of new streets in such subdivision. These sections do refer to a requirement that the preliminary plat shall show or be accompanied by information as to the proposed location, widths and names of streets; "tentative" cross-sections and center line profiles for all proposed new streets; the location and principal dimensions for all proposed streets, sidewalks, alleys, rights-of-way, easements, lot lines, drainage rights-of-way; proposed utility layouts for sanitary sewers, storm drains and water showing feasible connections to existing or proposed utility systems; the proposed use of lots, type of residential buildings with the number of proposed dwelling units and various other requirements and contingent requirements.
Thus it is obvious that the "general terms and conditions" referred to in section 23 related to the fixing of locations and dimensions of proposed streets, sidewalks, lot lines and sizes, utilities and like matters. It relates to planning and not to the standards of construction which are governed by other municipal ordinances.
Accordingly, it is the opinion of this court that the specifications for the construction of street pavement which were in effect at the time the preliminary plat for Cherry Hill was approved do not comprise part of the general terms and conditions described in section 23 of the ordinance.
The next issue involved is whether or not the plaintiff has vested rights under the law which are affected by the adoption of the amendment to the street improvement ordinance of the municipality on March 21, 1960, requiring *404 that streets thereafter constructed shall be required to be paved by the installation of bituminous concrete.
A right cannot be regarded as a vested right, unless it is something more than such a mere expectation as may be based upon an anticipated continuance of the present general laws; it must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another. Wanser v. Atkinson, 43 N.J.L. 571, 575 (Sup. Ct. 1881); Morin v. Becker, 6 N.J. 457, 470 (1951). See also 11 Amer. Jur., sec. 370, p. 1199.
Following final approval of "Cherry Hill, Section 2" on January 18, 1960, plaintiff filed a performance guarantee bond with the township in accordance with section 24 of the ordinance. One of the required installations guaranteed thereby was the construction of new roads in the tract with penetration macadam pavement. The testimony indicates that most of the streets are unpaved.
On May 8, 1956 the township granted final approval to the subdivision known as "Collins Estates, Section 1B." The testimony indicates that most of the streets laid out in said tract are as yet unpaved.
Upon receiving the aforesaid approvals, did the plaintiff acquire vested rights whereby he can install penetrating macadam pavement on the streets of said developments, or can the municipality compel him to install bituminous concrete pavement required under the amendment to the street construction ordinance adopted on March 21, 1960?
In the opinion of this court the plaintiff acquired vested rights only as to such streets which were paved with penetrating macadam prior to March 21, 1960. As to other streets remaining unpaved, the requirements of the amended ordinance are applicable.
Whatever rights the plaintiff has with regard to such unpaved streets are derived from the provisions of the land subdivision ordinance. At best such "rights" are based *405 merely upon an expectation of an anticipated continuance of the pavement specifications set forth in the street improvement ordinance which were in effect when such final approvals were granted.
The regulation or streets and roads within a municipality are within the purview of the public safety or general welfare of a municipality. Once streets of a subdivision are constructed and accepted by the municipality, the duty thereafter to maintain and repair them becomes a public expense. Under the law every municipality has the power to make, amend, repeal and enforce ordinances with respect to streets (N.J.S.A. 40:56-1; N.J.S.A. 40:67-1 et seq.). Unquestionably the municipality has the power to protect itself against the future expenditure of public moneys for maintenance and repairs of streets by the enactment of legislation requiring that a better pavement be installed in newly constructed streets. What may have been deemed adequate specifications for street pavement in 1939 may be grossly inadequate today in view of changes in the development of a municipality, traffic conditions and the greater use of roads for transportation.
Rights in land, if it can be argued by the plaintiff that he has such a right under the ordinance, must give way to greater needs of the community implemented by reasonable exercise of the police power. Lake Intervale Homes, Inc. v. Parsippany Troy Hills, 28 N.J. 423, 437 (1958); Rodee v. Lee, 14 N.J. Super. 188, 191 (Law Div. 1951).
In Collins v. Board of Adjustment of Margate City, 3 N.J. 200, 206 (1949), our Supreme Court stated:
"* * * All property is held in subordination to the police power; and the correlative restrictions upon individual rights  either of person or of property  are incidents of the social order, deemed a negligible loss compared with the resultant advantages to the community as a whole, if not, indeed, fully recompensed by the common benefits."
In summary, it is the opinion of this court that:
*406 1. The specifications contained in the street construction ordinance of the municipality are not included in the general terms and conditions designated under section 23 of the local subdivision ordinance wherein the plaintiff has rights which are fixed and determined under the latter ordinance.
2. The municipality under its general police powers has a right to change the specifications in its street construction ordinance from penetrating macadam pavement to bituminous concrete pavement, and the plaintiff is required to comply with such change in order to secure final approval for the Cherry Hill subdivision.
3. The plaintiff, upon securing final approval of the "Cherry Hill, Section 2" plat and the "Collins Estates, Section 1B" plat, acquired no vested right to use penetrating macadam pavement for his unconstructed streets, and the municipality can compel him to use bituminous concrete pavement required under the amended street construction ordinance.
Judgment will be entered denying the relief sought by the plaintiff in accordance with this opinion, with costs for the defendant.