185 N.J. Super. 313 (1982)
448 A.2d 510
THE BERKLEY CONDOMINIUM ASSOCIATION, INC., PLAINTIFF,
v.
THE BERKLEY CONDOMINIUM RESIDENCES, INC., ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Atlantic County.
Decided June 7, 1982.
*315 Norman L. Zlotnick for The Berkley Condominium Association, Inc. (Bloom & Zlotnick, attorneys).
Jeffrey L. Gold for The Berkley Condominium Residences, Inc.
Theodore S. Ridgway for Paul R. Auchter.
John C. Matthews for Michael Gottlieb.
GIBSON, J.S.C.
These are consolidated cases which bring into question the constitutionality of N.J.S.A. 46:8B-36. That statute creates a rebuttable presumption of unconscionability with respect to provisions in master deeds or condominium-association bylaws which retain to the developer or the association a right of first *316 refusal to buy a condominium upon resale, gift or devise. On its face, the statute purports to apply to master deeds and bylaws recorded prior to the effective date of the act.
The procedural history is extensive but, for the most part, is not relevant to the issue to be decided here. The material facts are not in dispute. Plaintiff is an association of unit owners in a high-rise condominium located in Atlantic City and constructed prior to 1974. Defendant is the developer and sponsor of the condominium project. The master deed and § 701 of the bylaws of the association require any owner who may wish to sell his unit to first offer the same to the developer. Over the years there have been a number of such sales, including many in which the developer exercised the right of first refusal. Although the association acquired a similar right if the developer failed to exercise its option, it was the association which first sought to challenge these provisions. That effort was initially unsuccessful for reasons unrelated to the present motions. The association appealed. During the pendency of the appeal the Legislature passed N.J.S.A. 46:8B-36 (effective 9/11/80), following which the matter was summarily reversed and remanded for further proceedings in light of the legislation. 85 N.J. 151. Cross-motions for summary judgment have now been filed.[1]R. 4:46-2.
Both parties agree that that statute is facially controlling. Defendant has not sought to present evidence to rebut the presumption of unconscionability, but instead argues that the law is unconstitutional because it purports to effect contracts already in existence at the time of passage. Since there are no reported cases interpreting the statute, this is a matter of first impression. N.J.S.A. 46:8B-36 reads as follows:
There is hereby established a rebuttable presumption of unconscionability with respect to provisions of master deeds or association bylaws recorded prior to the effective date of this act which shall arise whenever such a master deed or *317 bylaws shall contain any provision or clause affording the developer or the association a right of first refusal to buy a condominium unit upon resale, gift or devise by the condominium unit owner. Such presumption may be rebutted by the developer or the association by the presentation of evidence of the existence of facts and circumstances sufficient to justify and validate a provision of the master deed or the bylaws which would otherwise appear to be unconscionable under the provisions of this section.
Plaintiff does not seek to invalidate contracts already entered into by the developer pursuant to the exercise of the right of first refusal. Thus, although it relies on the statute to invalidate the existing right of first refusal, it seeks to do so only as to the developer's further exercise of that right.[2] This position, however, does not eliminate the constitutional challenge given the applicability of the statute to contracts already in existence, i.e., the master deed and bylaws.
Defendant's objections go not only to the retroactive nature of the legislation, but include claims of a lack of valid state interest as well as an absence of standards with respect to what constitutes evidence sufficient to overcome the presumption of unconscionability. In examining these challenges it is helpful to review the preamble to the statute.
....
The Legislature also finds and declares that many contracts for sale of condominium units, master deeds and association bylaws contain provisions affording the developer or the association a right of first refusal to purchase in the event of resale, gift or devise of condominium units by the purchaser, provisions which are in the financial interest of the developer or the association and are designed to limit the freedom of the purchaser to resell the property as he sees fit. The Legislature finds that the relative balance between the consideration given the financial interests of the developer or the association and the limitations placed upon the property rights of the purchaser contained in such provisions is such as to warrant the establishment of a rebuttable presumption of unconscionability with respect to those master deeds and bylaws, and amendments thereof, adopted prior to the effective date of this amendatory and supplementary act, and to warrant the prohibition of such provisions in contracts for the sale of condominium units executed, and in master deeds and bylaws or *318 amendments of master deeds or bylaws adopted, on or after that date. [N.J.S.A. 46:8B-31]
It is clear that the Legislature has made a determination that the public interest in maintaining the unfettered freedom to transfer real estate outweighs the financial interest of the developer in continuing a right of first refusal. Such a determination is well within the legislative powers of the State and consistent with a valid state interest. As has been frequently noted, private property rights are not absolute and are always subject to the reasonable exercise of the police power. David v. Vesta Co., 45 N.J. 301 (1965); Lincoln Park v. Cullari, 15 N.J. Super. 210, 215 (App.Div. 1951); Rothman v. Rothman, 65 N.J. 219, 225 (1974).
Questions of adequate standards and whether the statute may legitimately be applied to deeds and bylaws filed prior to the effective date of the act present different and more complex issues. In reviewing these questions, however, the court begins with the principle that the statute is entitled to a strong presumption of constitutionality. Male v. Renda Contracting, 64 N.J. 199, 201 (1974). It is within that framework that defendant's challenge must be examined.
Both the United States and the New Jersey Constitutions are implicated in this review. Defendant's argument suggests that if this statute is applied retroactively the U.S.Const., Art. I, § 10, and the N.J.Const. (1947), Art. IV, § VII, par. 3, would be violated.[3] Presumably, these sections apply because the statute has the effect of prohibiting the developer from enforcing contracts which were enforceable when made, i.e., the master deed, the bylaws and the initial contracts for the sale of units. Since there is no question that the Legislature intended the statute to have retroactive effect, it must stand or fall on that *319 basis. On the other hand, a trial court should not declare a statute unconstitutional unless the violation is "clear." Freedom Fin. Co. v. N.J.B.T. Co., 123 N.J. Super. 255, 260 (Cty.Dt.Ct. 1973); Legg v. Passaic Cty., 122 N.J.L. 100 (Sup.Ct. 1939), aff'd 123 N.J.L. 263 (E. & A. 1939).
Although the constitutional clauses recited forbid the enforcement of any law impairing the obligation of contracts, the cases demonstrate that "neither the United States nor the New Jersey courts have considered these provisions as absolutes." Freedom Fin. Co. v. N.J.B.T. Co., supra, 123 N.J. Super. at 260. As noted by Judge Yanoff:
... [The cases] have determined the question of whether there has been an impairment of obligation or deprivation of remedy by balancing the extent to which a contract party is deprived of the benefit of his contract against the social interests involved. Naturally, such a weighing of interests involves questions of judgment which may vary from time to time. [Ibid.]
The present legislation reflects a strong state interest in protecting housing and in particular the ability to freely transfer such property. The question therefore is whether the legislative determination that such interests outweigh the financial interest of the developer is sufficient to justify the impact on existing contracts. It is the conclusion of this court that it is.
It is important to keep in mind the nature of the contractual right which is being examined. As already noted, contracts already entered into pursuant to the right of first refusal are not challenged. Thus, the only impact here is the effect on the developer's option with respect to future sales. In a sense, that right is presently inchoate. It is also one that was not freely bargained for. This court may take judicial notice of the fact that the contents of master deeds and condominium bylaws are, subject to legislative restrictions, products of the developer and not the result of any give and take by the parties. Evid.R. 9(2). It is also significant that condominiums are unique and creatures of the Legislature, there being none at common law. N.J.S.A. 46:8B-1 et seq. Given the regulated nature of the field, therefore, the developer's expectations as to what can and *320 what cannot be done must be tempered by the Legislature's ability modify existing controls. Veix v. Sixth Ward B. & L. Ass'n, 123 N.J.L. 356 (E. & A. 1939); Plainfield v. Public Service Elec. and Gas Co., 82 N.J. 245, 254-257 (1980).
Many of the cases dealing with statutes the constitutionality of which is under challenge also involve questions of statutory construction. In those instances it is often stated that legislation will not be given retroactive effect unless such an intent is "clear, strong and imperative...." Kopczynski v. Camden Cty., 2 N.J. 419, 424 (1949). However, this is not a case of statutory construction. Both parties agree that the legislative intent is clear. As is also frequently stated, not all retroactive statutes are unconstitutional. Plainfield v. Public Service Elec. and Gas Co., supra, 82 N.J. at 254. For example, it has been traditionally held that retroactive legislation is constitutionally offensive only to the extent that it modifies or abrogates "vested rights." Rothman v. Rothman, supra. What rights may be considered "vested," however, is not always clear and, in a sense, the term is conclusory. Ibid.; 2 Sutherland, Statutory Construction (4 ed. Sands, 1973), § 41.05 at 260. More logically, one must examine what it is that is being taken away and weigh that loss against the social gain being achieved. When the state, in the exercise of its police power, acts to cure a perceived wrong, there is frequently a corresponding diminution of property rights.
... A state may, in the exercise of the police power, enact a statute to promote the public health, safety, morals or general welfare. Such a statute, because of retroactive application or otherwise, may diminish in value or totally destroy an individual's right, whether in property as such or arising out of contract, provided that the public interest to be promoted sufficiently outweighs in importance the private right which is impaired. [Citations omitted.] In these cases, as in many others as well, the court has, after examining the importance of the public interest served by the statute and comparing it with and balancing it against the quality and value of the right affected by the retroactive legislation, reached the conclusion that the state statute in question represented a valid exercise of the police power, despite the fact that in each case there was some clear incursion upon individual private rights. [65 N.J. at 225-226, citations omitted].
*321 In Rothman the Supreme Court rejected the argument that the Divorce Act of 1971 was unconstitutional even though the law altered existing property rights through equitable distribution. In effect, the court ruled that the weighing process engaged in by the Legislature was reasonable. A similar determination was made in Gibbons v. Gibbons, 86 N.J. 515 (1981), when the court was called upon to review a later amendment which excluded property acquired during marriage by way of gift, devise or bequest. N.J.S.A. 2A:34-23 (Supp. 1981). In deciding to apply the amendment retroactively the court engaged in the same type of weighing process but added the caveat that such an approach should not be taken if to do so would result in "manifest injustice" to the party adversely affected. Gibbons v. Gibbons, supra at 523.
... The essence of this inquiry is whether the affected party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively. [86 N.J. at 523-524]
Although the term "manifest injustice," like "vested rights," tends to be conclusory, such an inquiry nevertheless supports the conclusion favoring the retroactive application of this statute.[4] What the developer is losing is the potential for future profits over and above those already realized from the original sales and those options exercised over the last several years. The capping effect which the present legislation has on those profits seems to be a reasonable and limited means of effectuating the socially desirable goal of unfettered disposition of real estate. That is not to say that the developer's right to a profit is not worthy of protection, but rather that this incursion into that right is a relatively small and constitutionally acceptable means of serving the greater public good.
Even if one analyzes this question in terms of "vested rights," the conclusion is the same. What is being examined is a *322 contractual provision which the Legislature has determined to be presumptively unconscionable. Leaving aside the question of standards for the moment, it is difficult to imagine how anyone can acquire rights which are vested when the mechanism being relied upon is determined to be unconscionable. There is ample authority for the proposition that the courts of this State will not enforce such provisions. Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 403-404 (1960); Ellsworth Dobbs, Inc. v. Johnson, 50 N.J. 528, 553-555 (1967); Toker v. Westerman, 113 N.J. Super. 452, 455 (Dist.Ct. 1970); N.J.S.A. 12A:2-302. As stated in Ellsworth Dobbs, Inc. v. Johnson, both the courts and the Legislature are increasingly sensitive to the imposition of unfair bargains upon the public by people who, through experience, specialization or economic strength, have acquired some undue advantage. Such advantage may produce an assumption of burdens by the other contracting party which are considered unconscionable and therefore unenforceable. 50 N.J. at 553-554.
... Although the courts continue to recognize that persons should not be unnecessarily restricted in their freedom to contract, there is an increasing willingness to invalidate unconscionable contractual provisions which clearly tend to injure the public in some way. [Id. at 554]
See, generally, Troy Hills Village v. Tischler, 122 N.J. Super. 572 (Law Div. 1971); Sutherland, Statutory Construction, op. cit. at 259-266; Smith, "Retroactive Laws and Vested Rights," 6 Tex. L.Rev. 409 (1928).
Defendant's challenge to the lack of standards must also fail. As the statute indicates, a developer or association may overcome the presumption of unconscionability by the "presentation of evidence of the existence of facts and circumstances sufficient to justify and validate [the right of first refusal]." N.J.S.A. 46:8B-36. Admittedly, the Legislature has not elaborated on the types of "facts and circumstances" which would be deemed adequate. On the other hand, what is and what is not unconscionable is the type of determination our courts have been quite able to make for some time. Erie R. Co. v. Delaware, *323 Lack. & Western, and Morris & Essex R. Cos., 21 N.J. Eq. 283 (Ch. 1871); Ellsworth Dobbs, Inc. v. Johnson, supra. Nor is the term unique to this statute. Cf. N.J.S.A. 12A:2-302.[5]
For a variety of reasons, therefore, it is the view of this court that the legislation in question is constitutional and should be applied to the master deed and bylaws involved here. This was clearly the intent of the Legislature. Defendant's claims concerning the impairment of his contractual rights are not sufficiently strong to overcome the presumption of constitutionality or to outweigh the public good achieved, nor is the developer's continued claim to a right of first refusal "vested" in the sense that that term has been applied within the framework of a constitutional challenge. Plaintiff's motion for summary judgment is accordingly granted. Defendant's motion is denied.
NOTES
[1] Notice of the constitutional challenge was given to the Attorney General pursuant to R. 4:28-4, but he declined to intervene.
[2] In a separate lawsuit, also consolidated with these cases, there was a challenge by parties to contracts entered into by the developer but not consummated prior to the effective date of the statute. That suit has been settled.
[3] Although this constitutional challenge also implicates the Due Process Clause, the criteria to be examined in determining validity does not seem to reflect any material difference regardless of the particular constitutional provision involved.
[4] The "manifest injustice" standard, although not applied within the context of a constitutional challenge, involves a similar weighing process.
[5] Query, given the valid state interest and the ability of the Legislature to determine public policy, whether it was constitutionally necessary to couch the finding of unconscionability in terms of a presumption.