608 A.2d 895

ANGELICA PHILLIPS, AS ADMINISTRATRIX AND ADMINISTRA-
TRIX AD PROSEQUENDUM OF THE ESTATE OF WALTER
PHILLIPS, DECEDENT, PLAINTIFF–APPELLANT, v. MARK
CURIALE AND CHARLES WATSON, DEFENDANTS–RESPON-
DENTS, AND FMC CORPORATION, DEFENDANT.

Argued February 18, 1992—Decided July 13, 1992.

610

*Joseph Albanese* argued the cause for appellant (*Joseph Albanese* and *Fontanella and Benevento,* attorneys).

*Benjamin Clarke,* Senior Deputy Attorney General, argued the cause for respondents (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney; *Mary C. Jacobson,* Deputy Attorney General, of counsel; *William W. Hart, Jr.,* Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

O'HERN, J.

In *Phillips v. State,* 98 *N.J.* 235, 486 *A.*2d 318 (1985) (*Phillips* I), we held that a member of the New Jersey National Guard injured in the line of duty could sue fellow guard members for those injuries if attributable to the fellow guard members' negligence, unless the defendants were complying with a lawful order. *Id.* at 250, 486 *A.*2d 318. Recognizing the inconsistency that the fellow guard members might be held liable while the State is immune (and yet possibly liable for indemnification), we "invite[d] the Legislature to consider the seemingly anomalous and conflicting policies that have resulted from * * * the elimination of immunity for members of the military." *Id.* at 250–51, 486 *A.*2d 318. The Legislature responded in 1987 by restoring immunity to the fellow guard members and made its law applicable to "all actions and proceedings that accrue, *are pending* or are filed after June 1, 1986." *L.*1987, *c.* 217, § 6 (emphasis added). The effect of that law is to bar recovery by

any New Jersey National Guard member against a fellow member on account of injury sustained in the line of duty.

The question now is whether that legislative enactment retroactively applies to *Phillips* I. Because the legislative history does not suggest that the Legislature intended that the 1987 amendment apply retroactively to claims instituted before its effective date, we cannot sustain the statute's retroactive application to plaintiff's cause of action.

I

For purposes of this appeal, we accept plaintiff's version of the facts and procedural history.

On August 17, 1978, Walter Phillips, then a New Jersey National Guard member, suffered a paralyzing injury while on military-training maneuvers at Fort Drum, New York. Phillips sustained that injury from an accident that occurred while riding within an M–113 armored personnel carrier that was operated by defendant Charles Watson and commanded by defendant Mark Curiale. As the M–113 traveled at high speeds through rough terrain, Phillips was thrown from his seat and fractured his spine. That injury rendered him permanently quadriplegic.

Walter Phillips filed suit in 1980, naming Charles Watson, Mark Curiale, the State of New Jersey (the National Guard), and FMC Corporation (the manufacturer of the M–113) as defendants. The Law Division granted the Attorney General's motion for summary judgment and dismissed the complaint against defendants Watson, Curiale, and the State of New Jersey. The Appellate Division affirmed in an unreported opinion, and we granted plaintiff's petition for certification. *Phillips v. State*, 96 *N.J.* 279, 475 *A.*2d 578 (1984).

In *Phillips* I, *supra*, 98 *N.J.* at 250–51, 486 *A.*2d 318, we held that although Walter Phillips could not maintain a direct action against the State of New Jersey, he could sue his fellow guard members, Curiale and Watson, for line-of-duty injuries attribut-

able to their negligence. On July 29, 1987, the Legislature enacted *N.J.S.A.* 38A:13–1.2, which eliminated the liability of the State, National Guard, and National Guard members for injury or death sustained in the line of duty, except for injury or death caused by an intentionally-wrongful act of a co-member. The Legislature made that law applicable to all actions or proceedings that "accrue, are pending or are filed after June 1, 1986." *L.*1987, *c.* 217, § 6.

In September 1987, following a painful nine-year struggle against depression and other residuals of quadriplegia, Walter Phillips took his own life. His mother, as administratrix of his estate, wishes to continue the suit against defendants Curiale and Watson. (We shall continue to refer to the plaintiff as though it were Walter Phillips.)

In August 1988, Curiale and Watson renewed their motion for summary judgment, arguing that plaintiff's exclusive remedy is the compensation provisions of the Military and Veterans Law, *N.J.S.A.* 38A:13–1 to –9 (the military compensation law). Relying on *N.J.S.A.* 38A:13–1.2, the Attorney General argued that because Phillips' action was "pending" after June 1, 1986, the cause of action against his fellow guard members should be dismissed.

Plaintiff argued that the Legislature's inclusion of the retroactivity clause in the military compensation law was suspect because in his view it was totally unnecessary. His investigation disclosed that his case was the only pending military-tort case in New Jersey that represented financial exposure for the State because of a 1981 Congressional amendment to the Federal Tort Claims Act, 28 *U.S.C.A.* § 2671 to § 2680, that included within the definition of a federal employee members of the National Guard engaged in federalized duty. *See* 28 *U.S.C.A.* § 2671. Pursuant to that provision, the United States has assumed responsibility for tort claims asserted by National Guard members that accrued after the 1981 enactment. Because almost all National Guard duty is federalized duty, the

Attorney General has routinely removed military-tort claims to the federal courts. In plaintiff's view, there were simply no pending cases in 1987 that could reach the State treasury other than the *Phillips* case because plaintiff's cause of action accrued before the enactment of the federal amendment.

Plaintiff challenged the retroactive application of *N.J.S.A.* 38A:13–1.2 to his cause of action on four grounds: (1) as a matter of statutory construction the retroactivity provision does not apply to plaintiff's cause of action; (2) the application of that statute to plaintiff's case is "manifestly unjust" because of the time, expense, and effort invested in bringing the case to trial; (3) retroactive application is particularly harsh and oppressive here because it destroys plaintiff's cause of action, thus denying him due process of law; and (4) the retroactivity clause denies him the equal protection of the law and constitutes "special legislation" prohibited by article 4, section 7, paragraphs 7 and 8 of the New Jersey Constitution because the insertion of that clause into the military amendment was a "conscious plan to eliminate Walter Phillips' claim."

The Law Division rejected those arguments and granted the State's motion for summary judgment, dismissing the complaint with prejudice against defendants Watson and Curiale. The court reasoned that the Legislature specifically intended that the amendment be retroactively applied to the pending litigation. Next, the trial court held that to apply the amendment retroactively would not be manifestly unjust because the public interest in the uniform application of compensation laws and protection of the State from unnecessary financial burdens outweighed plaintiff's right to sue in tort. The court concluded that to give the amendment retroactive effect would not constitute a violation of due process or equal protection of law, nor would it constitute special legislation in violation of the New Jersey Constitution. The Appellate Division affirmed substantially for the reasons expressed by the Law Division. 245 *N.J.Super.* 418, 586 *A.*2d 245 (1991). We granted plaintiff's

petition for certification, 127 *N.J.* 545, 606 *A.*2d 360 (1991), and now reverse.

## II

We begin our analysis with the general principle of statutory construction that courts favor the prospective application of statutes. *Twiss v. State*, 124 *N.J.* 461, 466, 591 *A.*2d 913 (1991) (citing *Gibbons v. Gibbons*, 86 *N.J.* 515, 521, 432 *A.*2d 80 (1981)).

> It is a fundamental principle of jurisprudence that retroactive application of new laws is usually unfair. There is general consensus that notice or warning of the rule should be given in advance of the actions whose effects are to be judged. The hackneyed maxim that everyone is held to know the law, itself a principle of dubious wisdom, nevertheless presupposes that the law is at least susceptible of being known. But this is not possible concerning law that has yet to exist. [Norman J. Singer, 2 *Sutherland on Statutes and Statutory Construction* § 41.02 at 340 (4th rev. 1986) (*Sutherland*) (footnote omitted).]

On the other hand, courts are not free to disregard legislative intent. In *Bradley v. School Board of Richmond*, 416 *U.S.* 696, 94 *S.Ct.* 2006, 40 *L.Ed.*2d 476 (1974), the Supreme Court held that "a court is to apply the law in effect at the time it renders its decision." *Id.* at 711, 94 *S.Ct.* at 2016, 40 *L.Ed.*2d at 488 (citing *Thorpe v. Housing Auth. of Durham*, 393 *U.S.* 268, 281, 89 *S.Ct.* 518, 526, 21 *L.Ed.*2d 474, 484 (1969)). The Court based that holding on a broad reading of *United States v. Schooner Peggy*, 5 *U.S.* (1 Cranch) 103, 2 *L.Ed.* 49 (1801), in which Chief Justice Marshall explained the origin and justification for that rule:

> [I]f, subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional, * * * I know of no court which can contest its obligation. It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national concerns, * * * the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside. [*Id.* at 110, 2 *L.Ed.* at 51.]

The Court in *Bradley* recognized two exceptions to the principle that a court is to apply the law in effect at the time it renders its decision: when doing so "would result in manifest injustice or there is statutory direction or legislative history to the contrary." 416 *U.S.* at 711, 94 *S.Ct.* at 2016, 40 *L.Ed.*2d at 488.

In *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 *U.S.* 827, 837, 110 *S.Ct.* 1570, 1577, 108 *L.Ed.*2d 842, 853 (1990), the Court noted an "apparent tension" with the rule articulated in *Bradley* and *Thorpe* and its more recent decision in *Bowen v. Georgetown University Hospital*, 488 *U.S.* 204, 109 *S.Ct.* 468, 102 *L.Ed.*2d 493 (1988). In *Bowen*, the Court reaffirmed the generally-accepted rule that "[r]etroactivity is not favored in the law * * *. [C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." 488 *U.S.* at 208, 109 *S.Ct.* at 471, 102 *L.Ed.*2d at 500 (citations omitted); *see also United States v. Security Indus. Bank*, 459 *U.S.* 70, 79, 103 *S.Ct.* 407, 413, 74 *L.Ed.*2d 235, 243–44 (1982) (quoting *Union Pac. R.R. v. Laramie Stock Yards Co.*, 231 *U.S.* 190, 199, 34 *S.Ct.* 101, 102, 58 *L.Ed.* 179, 182 (1913) (citation omitted)) (" 'retrospective operation will not be given to a statute which interferes with antecedent rights * * * unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature' ' "). The *Kaiser* Court concluded that it need not reconcile the two lines of precedent, however, because "[u]nder either view, where the congressional intent is clear, it governs." 494 *U.S.* at 837, 110 *S.Ct.* at 1572, 108 *L.Ed.*2d at 854.

Our decisions reflect that same tension. In *La Parre v. Y.M.C.A.*, 30 *N.J.* 225, 152 *A.*2d 340 (1959), this Court said that when construing a statute, courts are not to give its terms retroactive operation " 'unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intent of the legislature cannot otherwise be satisfied.' " *Id.* at 229, 152 *A.*2d 340 (quoting *Kopczynski v. County of Camden*, 2 *N.J.* 419, 424, 66 *A.*2d 882 (1949)). Yet, in *State v. Ventron Corp.*, 94 *N.J.* 473, 498, 468 *A.*2d 150 (1983),

we stated that "[w]hen considering whether a statute should be applied prospectively or retroactively, our quest is to ascertain the intention of the Legislature." *See Kruvant v. Mayor & Council of Cedar Grove*, 82 *N.J.* 435, 440, 414 *A.*2d 9 (1980).

Thus, in *Twiss*, we applied a two-part test to determine whether a statute could be applied retroactively. First, we asked whether the Legislature intended to give the statute retroactive application. 124 *N.J.* at 467, 591 *A.*2d 913 (citing *Gibbons, supra*, 86 *N.J.* at 522, 432 *A.*2d 80). If the Legislature intended retroactive application, the second question is whether retroactive application of that statute will result in either an unconstitutional interference with "vested rights" or a "manifest injustice." *Ibid.* (citing *Ventron, supra*, 94 *N.J.* at 498–99, 468 *A.*2d 150; *Gibbons, supra*, 86 *N.J.* at 523, 432 *A.*2d 80).

Our analysis of plaintiff's challenges thus commences with the two-part test set forth in *Twiss*. We first consider whether the Legislature intended to apply the 1987 amendment retroactively; and, if so, whether a "manifest injustice" or loss of constitutional rights will result from any intended retroactive effects of the law.

### III

We turn first to the question of whether the Legislature intended to give *N.J.S.A.* 38A:13–1.2 retroactive application. In *Dewey v. R.J. Reynolds Tobacco Co.*, 121 *N.J.* 69, 577 *A.*2d 1239 (1990), we noted that " 'a statute [that] changes the settled law and relates to substantive rights is prospective only, unless there is an unequivocal expression of contrary legislative intent.' " *Id.* at 95, 577 *A.*2d 1239 (quoting *Pennsylvania Greyhound Lines v. Rosenthal*, 14 *N.J.* 372, 381, 102 *A.*2d 587 (1954)).

When searching for the most probable legislative intent, we have traditionally looked first to the statute's plain lan-

guage. *See Town of Morristown v. Woman's Club,* 124 *N.J.* 605, 610, 592 *A.*2d 216 (1991); *Kimmelman v. Henkels & McCoy, Inc.,* 108 *N.J.* 123, 128, 527 *A.*2d 1368 (1987); *Mortimer v. Board of Review,* 99 *N.J.* 393, 398, 493 *A.*2d 1 (1985); *State v. Butler,* 89 *N.J.* 220, 226, 445 *A.*2d 399 (1982). We have said that "[i]f the statute is clear and unambiguous on its face and admits of only one interpretation, we need delve no deeper than the act's literal terms to divine the Legislature's intent." *Butler, supra,* 89 *N.J.* at 226, 445 *A.*2d 399; *see State v. Churchdale Leasing, Inc.,* 115 *N.J.* 83, 101, 557 *A.*2d 277 (1989). If the language is plain and clearly reveals the statute's meaning, the court's sole function is to enforce the statute in accordance with those terms. *State v. Bigham,* 119 *N.J.* 646, 651, 575 *A.*2d 868 (1990).

The retroactivity clause at issue here provides: "This act shall take effect immediately and shall be applicable to all actions and proceedings that accrue, are pending or are filed after June 1, 1986." *L.*1987, *c.* 217, § 6. The question in this case is what does the phrase "after June 1, 1986" modify? If the Legislature had intended the statute to apply only to actions that were filed after June 1, 1986, there would be no need to refer to the later pendency of such actions. If such actions were not pending (either settled or dismissed), the statute would be irrelevant.

By the same token, actions that "accrued" after June 1, 1986, would, by definition, have to be filed after June 1, 1986, and there would be no necessity to refer to their pendency. It would appear that the statute was intended to affect, in some way, actions pending as of June 1, 1986, else there would be no reason whatsoever for that reference. Ordinarily we would assume that the Legislature would intend that the words of a statute have a meaning that is not superfluous or irrelevant. *See Medical Soc'y of New Jersey v. Department of Law & Pub. Safety,* 120 *N.J.* 18, 26–27, 575 *A.*2d 1348 (1990).

The legislative history of the amendment, found in the State archives, however, explains the relevance of the June 1, 1986, date and provides some insight into the reasons for the proposal. In a September 29, 1986, memorandum to the legislative sponsors of this proposed administration bill, Governor's Counsel explained:

> The Act is intended to apply to all actions and proceedings that accrue, are pending or are filed after June 1, 1986. This is in recognition of the fact that most compensation claims will arise from summer military training and the June 1 date was selected to encompass these potential claims. Persons bringing claims will have the same rights as other State employees injured while on the job.

That memorandum explains further that after this Court's *Phillips* I decision, the Legislature was advised "that the potential of lawsuits for personal injuries by one member of the militia against another has caused morale problems within the National Guard."

Although the point is debatable, the fairest interpretation of the words of the amendment seems to be that the Legislature intended to use June 1, 1986, the first date of that year's summer training exercises, as the date on which the law should take effect. Note that the Governor's Office specifically used the future tense when it had discussed the reasoning behind the Act's effective date—"most compensation claims *will arise* from summer military training," and the "June 1 date was selected to encompass these *potential* claims." (Emphasis added). To deduce "an unequivocal expression" of legislative intent that the amendment is to apply retroactively when the background information describes an intent to deal with "potential claims" is difficult.

Because the amendment's language is not "so clear, strong and imperative that no other meaning can be annexed to [it]," *La Parre, supra*, 30 *N.J.* at 229, 152 *A.*2d 340, and because the legislative history reveals an intent to apply the statute to all claims that accrued during the 1986 summer-training exercises, we cannot apply *N.J.S.A.* 38A:13–1.2 to plaintiff's claim.

## IV

Although our disposition of the case does not require it, we shall consider next whether the retroactive application of *N.J.S.A.* 38A:13–1.2 to plaintiff would either unconstitutionally interfere with "vested rights" or be "manifestly unjust". We do so because the Legislature may wish to consider specifically whether it intends the amendment to apply retroactively to plaintiff's claim.

Although we have, in some instances, fused the due-process/vested-rights analysis with the manifest-injustice analysis, for ease of understanding, we address each of those concerns separately. We conclude that under either theory, the statute's retroactive application to plaintiff would constitute a valid exercise of the State's police power.

### A.

As previously noted, we have traditionally determined the constitutionality of retroactive legislation by examining whether the statute impairs or abrogates "vested rights." *See Twiss, supra,* 124 *N.J.* at 469, 591 *A.2d* 913; *Panzino v. Continental Can Co.,* 71 *N.J.* 298, 304, 364 *A.2d* 1043 (1976); *see also Sutherland, supra,* § 41.06 at 375 (a statute cannot be retroactively applied when it interferes with, impairs or divests a vested right). Our Court has defined a "vested right" as "a present fixed interest which * * * should be protected against arbitrary state action." *Pennsylvania Greyhound Lines, supra,* 14 *N.J.* at 384, 102 *A.2d* 587. Other New Jersey courts have defined the term by stating what a "vested right" is not: " 'There can be no vested right in the continued existence of a statute or rule of the common law which precludes its change or repeal.' " *Savarese v. New Jersey Auto. Full Ins. Underwriting Ass'n,* 235 *N.J.Super.* 298, 309, 562 *A.2d* 239 (App.Div. 1989) (quoting *Magierowski v. Buckley,* 39 *N.J.Super.* 534, 558, 121 *A.2d* 749 (App.Div.1956)); *see also Levin v. Township of Livingston,* 62 *N.J.Super.* 395, 404, 163 *A.2d* 221 (Law Div.

1960) (declaring that a "mere expectation as may be based upon an anticipated continuance of the present general laws" is not a vested right; to become vested, a right "must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another"), *aff'd in part, rev'd in part*, 35 *N.J.* 500, 173 *A.*2d 391 (1961) (citations omitted).

"[D]iscerning commentators and judges" have questioned the value of vested-rights analysis and have suggested that "the true test of the constitutionality of a retrospective law is whether a party has changed his [or her] position in reliance upon the existing law, or whether the retrospective act gives effect to or defeats the reasonable expectations of the parties." Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 *Harv.L.Rev.* 692, 696 (1960) (Hochman) (footnotes omitted). Although agreeing that the parties' reasonable expectations may be relevant, Hochman has argued that the constitutionality of a retroactive statute is in fact determined by courts through a weighing of the following factors: (1) the nature and strength of the public interest served by the statute, (2) the extent to which the statute modifies or abrogates the asserted right, and (3) the nature of the right that the statute alters. *Id.* at 697. In *Rothman v. Rothman*, 65 *N.J.* 219, 320 *A.*2d 496 (1974), we applied a similar test to determine whether a retroactively-applied statute constituted a deprivation of due process. We said in *Rothman* that that analysis essentially involves asking whether,

> after examining the importance of the public interest served by the statute and comparing it with and balancing it against the quality and value of the right affected by the retroactive legislation, [one could conclude] that the statute in question represented a valid exercise of police power, despite the * * * clear incursion upon individual private rights. [*Id.* at 226, 320 *A.*2d 496.]

*See also Berkley Condominium Ass'n v. Berkley Condominium Residences, Inc.*, 185 *N.J.Super.* 313, 320, 448 *A.*2d 510 (Ch.Div.1982) (when determining what rights may become vest-

ed, "one must examine what it is that is being taken away and weigh that loss against the social gain being achieved").

Fairly-debatable questions concerning the need and propriety of the means used to meet the situation fall within the Legislature's police powers to " 'secure the general comfort, health, and prosperity of the state,' " and thus, in that weighing process " '[e]very reasonable presumption is to be made in favor of the validity of the legislative act.' " *Rothman, supra,* 65 *N.J.* at 227, 320 *A.*2d 496 (quoting *Reingold v. Harper,* 6 *N.J.* 182, 194, 78 *A.*2d 54 (1951)). The judiciary may not interfere with legislative action unless there is " 'no real or substantial relation between the legislative act and a valid public interest * * * or the measure is, beyond all question, a palpable invasion of rights secured by the organic law.' " *Id.* at 195, 78 *A.*2d 54. Stated differently, we have said that retroactive application of civil legislation generally does not violate due process unless the consequences are " 'particularly harsh and oppressive.' " *Twiss, supra,* 124 *N.J.* at 469–70, 591 *A.*2d 913 (quoting *Ventron, supra,* 94 *N.J.* at 499, 468 *A.*2d 150); *Edgewater Inv. Assocs. v. Borough of Edgewater,* 103 *N.J.* 227, 238, 510 *A.*2d 1178 (1986) (citing *United States Trust Co. v. New Jersey,* 431 *U.S.* 1, 17 n. 13, 97 *S.Ct.* 1505, 1515 n. 13, 52 *L.Ed.*2d 92, 106 n. 13 (1977)).

Because those weighing processes are so intertwined with the "manifest-injustice" standard of retroactivity analysis, we shall primarily consider in this part of the opinion the "nature of the altered right"—whether, as a matter of constitutional law, plaintiff had a constitutionally-protected vested right in a negligence action against his fellow guard members when the 1987 amendment was enacted.

Precedent suggests that like any other tort claim, plaintiff's right to sue his fellow guard members is not "secured by the organic law." Litigation expectations are never final. In *Moss v. Hawaiian Dredging Co.,* 187 *F.*2d 442 (9th Cir.1951), parties who had won an important decision in the

United States Supreme Court with respect to overtime pay lost the fruits of their courtroom victory when Congress overruled that decision. Until a right is reduced to judgment, new statutory provisions can constitutionally be applied when there is no final disposition of the litigation. *Chase Sec. Corp. v. Donaldson,* 325 *U.S.* 304, 65 *S.Ct.* 1137, 89 *L.Ed.* 1628 (1945); *see also Johnson v. Continental West, Inc.,* 99 *Wash.*2d 555, 663 *P.*2d 482, 486 (1983) (holding that no vested right in tort action until case is finally resolved on appeal and final judgment is entered).

California recently examined that issue of the nature of the right to pursue a tort claim in the context of a constitutional referendum amendment altering that right. Although the California Supreme Court interpreted the referendum not to apply retroactively, the California intermediate appeals court had ruled:

Application of the Act to tort claims which accrued before its effective date is not an unconstitutional abrogation of vested rights. An injured person's expectancy of a tort recovery is an inchoate, unliquidated claim contingent on his or her ability to persuade a trier of the fact of the merits of the claim. Such an expectancy falls short of being a vested right. A plaintiff has no vested property right in a particular measure of damages; the Legislature has broad authority to modify the scope and nature of such damages. [*Evangelatos v. Superior Court,* 198 *Cal.App.*3d 320, 234 *Cal.Rptr.* 344, 348 (Ct.App.1987), *aff'd in part, rev'd in part,* 44 *Cal.*3d 1188, 246 *Cal.Rptr.* 629, 753 *P.*2d 585 (1988).]

Other California Supreme Court decisions have similarly upheld the legislature's power to expand or limit recoverable damages. See, *e.g., Fein v. Permanente Medical Group,* 695 *P.*2d 665, 680 (upholding legislative action limiting damages for non-economic losses to $250,000 in medical malpractice cases as rationally related to legitimate state interest), *appeal dismissed,* 474 *U.S.* 892, 106 *S.Ct.* 214, 88 *L.Ed.*2d 215 (1985); *American Bank and Trust Co. v. Community Hosp.,* 683 *P.*2d 670 (1984) (validating legislation providing that medical malpractice awards for future damages to be paid periodically instead of on a lump-sum basis as not violating Due Process or Equal Protection Clauses); *Werner v. Southern California*

*Associated Newspapers,* 35 *Cal.*2d 121, 216 *P.*2d 825 (1950) (upholding legislative enactment largely eliminating plaintiff's right to obtain general damages in libel action as being rationally related to a valid state interest).

Those cases are rooted in principles of substantive due process that define the sovereign powers of government—when there is an evil that deserves redress, "the Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object." *Silver v. Silver,* 280 *U.S.* 117, 122, 50 *S.Ct.* 57, 58, 74 *L.Ed.* 221, 225 (1929). Nor is legislation "readjusting rights and burdens * * * unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability based on past acts." *Usery v. Turner Elkhorn Mining Co.,* 428 *U.S.* 1, 16, 96 *S.Ct.* 2882, 2893, 49 *L.Ed.*2d 752, 767 (1976) (citations omitted); *see also Duke Power Co. v. Carolina Env. Study Group, Inc.,* 438 *U.S.* 59, 88 n. 32, 98 *S.Ct.* 2620, 2638 n. 32, 57 *L.Ed.*2d 595, 620 n. 32 (1978) (quoting *Second Employers' Liability Cases,* 223 *U.S.* 1, 50, 32 *S.Ct.* 169, 175, 56 *L.Ed.* 327, 346 (1912)) (" 'A person has no property, no vested interest, in any rule of the common law.' ").

Those principles of legislative power to establish new regimes of recovery or to abolish existing rights have been held applicable in a wide variety of circumstances. For example, the $30,000 damage cap for impaired earnings, pain and suffering, and attorneys fees and other costs resulting from injuries caused by vaccines administered before the effective date of the National Childhood Vaccine Injury Act, 42 *U.S.C.A.* § 300aa–15(b), has recently been sustained. See *Morris v. Secretary of the Dep't of Health & Human Servs.,* 20 *Cl.Ct.* 14, 23–24 (1990). To make occupational-disease claims covered by workers compensation instead of tort law would not constitute a constitutional violation. *See Mergenthaler v. Asbestos Corp. of Am.,* 534 *A.*2d 272, 280 (Del.Super.Ct.1987) (applying legislative amendment to the Workmen's Compensation Law for asbestos-

related diseases did not "violate the concepts of retroactivity and [met] the test of fairness").

Traditionally, then, inchoate tort claims have not been regarded as vested rights of sufficient status to withstand, in all circumstances, a clear legislative intent to apply retroactively the amendments to plaintiff's cause of action.

### B.

Plaintiff next argues that to apply that statute retroactively to his cause of action would result in "manifest injustice." We said in *Edgewater, supra,* 103 *N.J.* 227, 510 *A.*2d 1178, that that challenge does not flow from constitutional requirements, but instead is based on equitable concerns. *Id.* at 239, 510 *A.*2d 1178 (citing *Ventron, supra,* 94 *N.J.* at 498, 468 *A.*2d 150).

The essence of this inquiry is whether the affected party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively. [*Ibid.* (quoting *Gibbons, supra,* 86 *N.J.* at 523–24, 432 *A.*2d 80).]

We noted in *Edgewater* that the "manifest-injustice" standard involved a "weighing process" similar to the due-process analysis espoused in *Rothman, supra,* 65 *N.J.* at 225–26, 320 *A.*2d 496. *Id.* 103 *N.J.* at 240, 510 *A.*2d 1178 (citing *Berkley Condominium Ass'n, supra,* 185 *N.J.Super.* at 321 n. 4, 448 *A.*2d 510).

Because there is no litmus test for decision, we must consider in the weighing process the extent to which plaintiff changed his position in reliance on the existing law (*Phillips* I) or had his reasonable expectations defeated. The largest single change of position asserted by plaintiff is the continued pursuit of his tort claim with related investigative, trial-preparation, and expert-witness expenditures. Some of that expense, however, may be recouped in the still-pending suit against FMC, the manufacturer of the armored personnel carrier.

■ Because plaintiff did not have the benefit of our *Phillips* I decision during the seven years of litigation that preceded our 1985 decision, and because *Phillips* I suggested that its "anomalous result" invited legislative response and because the Legislature did respond in 1987, the extent of his reliance is undercut. We cannot say on balance then that " 'there is no real or substantial relation between the legislative act and a valid public interest,' " or that there was a " 'palpable invasion of rights secured by the organic law.' " *Rothman, supra,* 65 *N.J.* at 227, 320 *A.*2d 496 (quoting *Reingold, supra,* 6 *N.J.* at 195, 78 *A.*2d 54).

The specter of soldier suing soldier for a service-related accident can be thought to have struck the Legislature as destructive of the morale and camaraderie that is essential to military teamwork and discipline. In his letter to the legislative sponsor, Governor's Counsel had paraphrased one high-ranking military official as saying that "the fear of lawsuits has caused some concern to those in positions of authority who must give orders to protect the public safety." To limit claims in that context to a scheme of military compensation is a policy choice uniquely within the legislative sphere. Plaintiff's expectations of pursuing a tort remedy as opposed to a military-compensation remedy cannot be said by us to outweigh the public interest.

In the modern context, a key element in evaluating retroactive change is whether the Legislature has denied a claimant all remedies or has modified available remedies. To paraphrase the blunt and painful words of the United States Supreme Court, "[h]aving now lost the battle [for the tort defense] in the * * * Legislature, petitioners wish[ ] to continue the war in court. Losing a political skirmish, however, in itself creates no ground for constitutional relief." *General Motors Corp. v. Romein,* 503 *U.S.* ——, ——, 112 *S.Ct.* 1105, 1112, 117 *L.Ed.*2d 328, 340 (1992). Were plaintiff to lose this skirmish in the Legislature, that fact would not allow us to grant legislative relief on the grounds of manifest injustice. Of course this

assumes that the legislation would not leave petitioner remediless under the military compensation law. Presumably, the matter would be remanded to the Chief of Staff of the Department of Defense for adjudication of the military-compensation claim. *See Estelle v. Board of Education of Red Bank*, 14 *N.J.* 256, 102 *A.*2d 44 (1954) (compensation court should reopen case after adjudication of law that accident was covered by worker's compensation, not general liability).

V

Plaintiff's remaining challenge is that the amendment would deny him equal protection if targeted at his specific case, thereby constituting "special legislation," prohibited by article IV, section 7, paragraphs 7 and 8 of the New Jersey Constitution. We have said that " '[t]he test of whether a law constitutes special legislation is essentially the same as that which determines whether it affords equal protection of the laws.' " *Township of Mahwah v. Bergen County Bd. of Taxation*, 98 *N.J.* 268, 285, 486 *A.*2d 818 (1985) (quoting *Robson v. Rodriguez*, 26 *N.J.* 517, 528, 141 *A.*2d 1 (1958)).

In *Vreeland v. Byrne*, 72 *N.J.* 292, 370 *A.*2d 825 (1977), we used a three-part test for determining whether a statute is unconstitutional as special legislation. First, we considered the purpose of the enactment and subject matter with which the legislation is concerned. *Id.* at 298, 370 *A.*2d 825. Next, we applied that legislation to the facts of that case to determine "whether there are persons similarly situated to those embraced within the act, who, by the terms of the act, are excluded from its operation." *Id.* at 299, 370 *A.*2d 825. Finally, we determined "whether, *as so applied*, the resulting classification can be said to rest upon any rational or reasonable basis relevant to the purpose and the object of the act." *Id.* at 301, 370 *A.*2d 825; *see Town of Morristown v. Woman's Club*, *supra*, 124 *N.J.* at 621, 592 *A.*2d 216 (Clifford, J., dissenting);

*Newark Superior Officers Ass'n v. City of Newark,* 98 *N.J.* 212, 223, 486 *A.*2d 305 (1985).

■ Keeping in mind those three general principles, we now apply the *Vreeland* principles to the statute presented here. The purpose of the legislation is clear: to restore immunity to fellow guard members on account of suits by fellow guard members. See *N.J.S.A.* 38A:13–1.2. Because that is surely a valid State purpose, our next inquiry is whether any person or group similarly situated to those embraced by the Act is excluded from the operations of the Act. *Vreeland, supra,* 72 *N.J.* at 299, 370 *A.*2d 825. Neither an individual nor a group is shown to be excluded by the Act's facial application. That a statute may be valid as a general law even if only one entity is covered is settled. *Clark v. Byrne,* 165 *N.J.Super.* 98, 105, 397 *A.*2d 719 (Law Div.), *aff'd,* 165 *N.J.Super.* 16, 397 *A.*2d 685 (App.Div. 1978).

■ Much of plaintiff's claim for disparate and selective treatment stems from the belief that the Attorney General singled him out for this amendment and that the Attorney General's office, which had lost the case in the courtroom, did an end-around of the Court's decision. Plaintiff emphasizes that because of the 1981 amendments to the Federal Tort Claims Act, almost all guard members in plaintiff's position have had their cases removed to federal courts for decision under federal law and that there would be no occasion for retroactive application to anyone but plaintiff. The Attorney General denies that claim, asserting that other cases were pending, and has referred us to two instances in the United States District Court in which State claims were decided on the basis of the amendment.

The application of *N.J.S.A.* 38A:13–1.2 would not constitute special legislation even had plaintiff's been the only case to which the legislation might apply and had the Attorney General sponsored that legislation. "The fact that only one entity that meets the specific provisions of the amendment has been identi-

fied * * * does not render the legislation special." *Paul Kimball Hosp. v. Brick Township Hosp.*, 86 *N.J.* 429, 448, 432 *A.*2d 36 (1981) (footnote omitted); *see also Budd v. Hancock*, 66 *N.J.L.* 133, 136, 48 *A.* 1023 (Sup.Ct.1901) (determining that "[i]f * * * this act is special only in the sense that its object is single, the question of its special character in a legal sense does not arise"). The point is that no one who should be included has been excluded from the Legislature's action. *See Newark Superior Officers Ass'n, supra*, 98 *N.J.* at 223, 486 *A.*2d 305 (citations omitted). That the Legislature had to deal with a single case would not have invalidated its response if it had not made its act applicable solely to plaintiff and to no others.

Because retroactive application of *N.J.S.A.* 38A:13–1.2 would be based on a "rational and reasonable" basis, we conclude that its application to plaintiff would not violate New Jersey's prohibition against "special legislation" and for the same reason would not constitute a denial of equal protection.

## VI

To repeat, we are unable to conclude that the Legislature intended for the retroactive application of this legislation to plaintiff's cause of action. We thus reverse the judgment below insofar as it holds the military-compensation remedy to be exclusive and remand the matter to the Law Division for further proceedings.

In this case, as in *Phillips* I, we have attempted to effectuate the Legislature's will. We therefore delay the effective date of our decision for ninety days to allow for legislative clarification. Should we have misread the Legislature's intent with respect to the amendment's retroactive application to Walter Phillips' pending claim, the Legislature retains the full power to clarify its intention and to provide a military-compensation claim as the exclusive remedy for injury or death occurring in the line of duty.

The Appellate Division judgment is reversed and the matter is remanded to the Law Division for further proceedings.

CLIFFORD, J., dissenting in part.

Only from so much of the Court's otherwise straightforward and eminently sensible opinion as attempts to come to grips with the slippery doctrine of retroactivity do I dissent. See Part IV, *ante* at 620–628, 608 *A*.2d 901–905. I join in the judgment because I agree that the Legislature did not intend that *N.J.S.A.* 38A:13–1.2 apply to plaintiff's claim. See *ante* at 619, 608 *A*.2d 901.

Not only is the discussion of retroactivity in Part IV unnecessary to the Court's disposition of the appeal, as the opinion readily acknowledges, *ante* at 620, 608 *A*.2d 901, it is entirely irrelevant. "Retroactivity" has nothing to do with this case. The problem is not one of applying today's legislation to cases that antedate the effective date of the legislation; rather, the question is whether, by the very terms of its enactment, the Legislature has itself applied the statute to a given situation— here, plaintiff's case. The Court has correctly decided that the statute does not apply. I would not further muddy the already-murky waters of retroactivity analysis.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.