This is a bill to foreclose a second mortgage dated June 20th, 1944, in the sum of $52,500. The bill was filed September 6th, 1944, and subpoenas issued on September 7th, 1944. *Page 2 
The allegation of the bill is that taxes became delinquent on August 2d 1944, and that receipts for these taxes have not been delivered to complainant; that water rents were assessed on September 2d 1944, and became delinquent and unpaid, and that by reason of these defaults complainant has elected that the entire principal shall now be due and payable.
Defendant, owner of the equity of redemption, has answered the bill of complaint and complainant moves to strike. The seventh paragraph of the answer denies that water rents became due or delinquent on or before September 2d 1944, but alleges that they did not become due or delinquent until September 8th, 1944, and avers that the bill therefor was paid on September 6th, 1944. Complainant moves to strike this answer as sham.
The answer also alleges that water rent is not a charge in the nature of an assessment and that therefore no right of acceleration exists under the terms of the mortgage. Complainant moves to strike as frivolous.
The answer alleges "the receipts evidencing the payment of taxes and water rent could not be produced because they were in the hands of the first mortgagee and had not yet been returned by it." Complainant moves to strike this answer as frivolous and in addition the entire answer as either sham or frivolous and filed for the purpose of delay.
It clearly appears by affidavits and admissions of defendant that receipts for taxes were never delivered to complainant or to his assignor up to the time of argument on this motion.
As to payment of taxes, a receipted bill shows a tax payment on July 31st, 1944. As to water rents, receipt shows payment September 8th, 1944. As heretofore noted, the bill was filed September 6th, 1944, and subpoena issued September 7th, 1944, so that at the time of the filing of the bill and the issuing of subpoenas, taxes had, in fact, been paid, but the water rent had not been paid, i.e., had not been so noted on the books of the Water Department, until September 8th, 1944.
The covenant of the mortgage is that the mortgagor shall pay the principal and interest at times therein stated and in addition thereto: *Page 3 
(1) shall pay the taxes assessed upon the premises hereinafter described before the same or any part thereof shall become delinquent under the law;
(2) and shall such taxes, under any present or future law, be payable in installments, then any such installment of taxes shall be paid before the same becomes delinquent;
(3) and shall produce receipts for each such installment within ten days after such payments;
(4) and shall also pay all other taxes, municipal assessments or charges in the nature thereof which may be laid or assessed on said premises immediately upon their assessment.
The acceleration clause provides that if there is a default in the payment of interest or installments of principal
(1) "or in the payment of any tax or charge as aforesaid, as hereinbefore provided,"
(2) "or in such production of tax receipts as aforesaid, on or before the days aforesaid, then and in either such case, each and every installment of principal debt remaining due as aforesaid" shall give an option to the mortgagee to declare the entire principal sum, together with interest, c., due and payable.
It appeared at the argument of the motion that the real estate tax had, in fact, been paid before the filing of the bill and that in this respect there was no default, but it also appears that there was complete failure to produce the tax receipts within ten days after the payment of said taxes. It further appears that the water rent was delinquent at the time of the filing of the bill, this by reason of non-payment on August 1st, 1944.
The question is raised as to whether water charges or rents come within the purview of the clause "and shall also pay all other taxes, municipal assessments or charges in the nature thereof."
The first question for decision is, did complainant have the right to invoke the acceleration clause merely because of non-production of the tax receipts, even though the taxes had, in fact, been paid?
The second question is, did complainant have the right *Page 4 
to invoke the acceleration clause because of non-payment of water rents?
Of course, if the first question is decided in the affirmative the answer to the second question is merely academic.
The holding is that complainant's right to accelerate arose by reason of non-production of the tax receipts in accordance with the terms of the covenant contained in the bond and mortgage and also by reason of the non-payment of water rents before the filing of the bill.
It is firmly established that each and every condition in a mortgage is deemed to be separate and distinct. Brown v. RoyalBattery Corp., 131 N.J. Eq. 345; 25 Atl. Rep. 2d 203.
The bond and mortgage constituted the contract between the parties thereto and this court may not relieve against that contract where a default arises by reason of the fault of one of the parties thereto, unless the other party has, by his conduct, induced the default.
The court, in O'Connor v. Meskill, 39 Atl. Rep. 1061, at the bottom of page 1062, said, "the contract is complete and unambiguous, and this court has no power either to remodel it, to make it more lenient, or to so construe it as to defeat its manifest intent."
On argument it was said by defendant, but not raised in defendant's answer, that the original mortgagee assigned the mortgage to complainant on August 10th, 1944, and that defendant, having no knowledge of the assignment, could not have produced tax receipts to complainant. However, the assignment was recorded September 7th, 1944, and defendant could have tendered to the original mortgagor the tax receipts and escaped default at any time up to and including September 7th, 1944, but the fact is, as admitted by defendant, that such receipts were not attempted to be produced until a hearing on this motion, even though the assignment of the mortgage was recorded September 7th, 1944. Of course, if complainant's conduct induced defendant's failure to produce the tax receipts, equity would relieve against the default, but here defendant does not so aver in its answer, which says: "The receipts evidencing the payment of taxes and water rent *Page 5 
could not be produced because they were in the hands of the first mortgagee and had not yet been returned by it," and in addition, there was no attempt to tender tax receipts to either the mortgagee or to his assignee. Vice-Chancellor Church, inScharff v. Annattee Realty Co., 96 N.J. Eq. 225;124 Atl. Rep. 702, dealt with a similar defense and upheld the right to foreclose. He cited Newark Trunk Co. v. Clark, 94 N.J. Eq. 79;118 Atl. Rep. 263.
In Best v. Katz, 105 N.J. Eq. 655; 148 Atl. Rep. 577, it appeared that there was a failure to pay interest and a failure to produce tax receipts. There had been a tender of interest payment, which is referred to by Vice-Chancellor Ingersoll, but his holding that the complainant had a right to foreclose was based solely on the non-production of tax receipts. He said, at the bottom of page 656:
"There is no contention that the receipts for the municipal taxes were produced as required by the terms of the mortgage. If the failure to produce the tax receipts is sufficient default to make the principal due, then the complainant is entitled to a decree. The agreement in each of these mortgages was that the mortgagors should produce the said tax receipts at a certain time, and if default should be made in the production in any year of tax receipts, the whole principal debt of said bond and mortgage should, at the option of the mortgagee, become due and payable, and payment of said principal debt and all interest thereon might be enforced and recovered at once."
He cites Weiner v. Cullens, 97 N.J. Eq. 523;128 Atl. Rep. 176, which case is authority for the general proposition that contracts for the acceleration of payment of the debt are recognized in equity as being competent, and for the further proposition that the motives inducing the foreclosure are not to be inquired into in determining the right to foreclose.
In the Best Case I have inspected the files as found in Docket 73, page 292, and find that there was an allegation that the receipt showing payment of the municipal taxes for the second half of 1928 was not produced to the complainant within the time provided in the acceleration clause, and that *Page 6 
record also shows that the taxes for the second half of 1928 were actually paid before the filing of the bill but the tax receipts were not produced prior thereto. It thus appears that the facts in the Best Case were practically the same as in the present case, i.e., that the taxes had, in fact, been paid before the filing of the bill but that the tax receipt was not produced at the time of the filing thereof nor within the time mentioned in the acceleration clause.
As to the water rates, it is observed again that the bond and mortgage provided "and shall also pay all other taxes, municipal assessments or charges in the nature thereof immediately upon their assessment." Under an ordinance providing "rules, rates and regulations governing the assessment and collection of water rates and charges for the Water Department of the City of Atlantic City, N.J.," introduced May 14th, 1936, and to take effect on and after August 1st, 1936, it was provided that "water rates shall be due" on the first day of August of each year. (Defendant paid on September 8th.)
It seems clear that water rates are "municipal assessments or charges," in fact, R.S. 40:62-78 vests a lien for water rates assessed by a municipality and R.S. 40:62-79 provides the method of enforcing said lien, and the Court of Errors and Appeals, in New Brunswick Savings Institution v. NewBrunswick, 124 N.J. Eq. 258; 1 Atl. Rep. 2d 378, affirming Vice-Chancellor Buchanan, whose opinion appears in 15 N.J. Mis.R. 732; 195 Atl. Rep. 301, said:
"It is perfectly clear to us that the lien is vested by section 11 of the statute quoted, and that section 12 affords a means for the collection thereof." Section 11 is now R.S. 40:62-78 and section 12 is now R.S. 40:62-79.
To hold that the water rates are not within the contemplation of the acceleration clause hereinbefore quoted would be contrary to the legal significance attached to that language as it is to be gathered from a reading of the legislative enactment with respect to the language used in the acceleration clause.
Defendants rely heavily on Grigg v. Landis, 21 N.J. Eq. 494,
which dealt with a bill for specific performance. The *Page 7 
question was whether complainant's right to a decree had been forfeited by the assignment to him of the original contract of sale, under which the defendant Landis agreed to sell to complainant's assignor the premises in question. The original contract of sale provided for forfeiture in case of assignment. The court held that "penalties, forfeitures, and re-entries for conditions broken, are not favored in equity, and constitute a large branch of equitable relief."
In the case sub judice we are not considering the enforcing of a penalty or forfeiture, but it has been uniformly held that the stipulation in a mortgage for the whole debt to mature upon default in performance of covenants as to payment of interest, taxes, placing insurance, c., are not treated as a forfeiture clause, but rather as a stipulation for a period of credit on condition. Berla v. M. L. Holding Co., 105 N.J. Eq. 592;149 Atl. Rep. 64; affirmed, 107 N.J. Eq. 598; 154 Atl. Rep. 629, and as said by Vice-Chancellor Backes in Newark Trunk Co. v.Clark, supra, "a failure, therefore, to meet the terms of the stipulations is fatal unless it is shown that the lapse is attributable in some manner to the conduct of the complainant."
He further said: "the complainant alone can relent; the court is powerless to relieve."
The motion to strike is granted.
Application was also made for the appointment of a receiver. Complainant relies on the covenant appearing in the mortgage, which says: "He shall have the absolute right to the appointment of a receiver, without any consideration of the value of the mortgaged premises or solvency."
As said by Vice-Chancellor Bigelow in Tucker v. NaboConstruction Corp., 108 N.J. Eq. 449; 155 Atl. Rep. 460, such a covenant is not binding on the court and does not entitle the mortgagee to the appointment of a receiver as a matter of right. He further said that such a covenant is entitled to weight in the exercise of the court's discretion as to whether a receiver shall be appointed.
In the instant case it is conceded by complainant that the value of the mortgaged premises far exceeds all liens and encumbrances against it, so that complainant's mortgage *Page 8 
security is not impaired in the least. All interest, taxes, water rents and other charges have been paid in full. Defendant is successfully operating a large hotel on the premises which they purchased less than a year ago. To appoint a receiver and disrupt the present hotel management under the circumstances of this case might well result in a management less competent than at present and result to the detriment of not only the defendant but the complainant. The appointment of a receiver is refused.
See, also, New Jersey National Bank v. Morris, 9 N.J. Mis.R. 444. *Page 9