737 A.2d 704

CHASE MANHATTAN MORTGAGE CORPORATION, PLAINTIFF, v. THOMAS SPINA ET UX, HERITAGE SQUARE ASSOCIATION; STATE OF NEW JERSEY; NOEL OLSON AND ROBERT OL-SON AND B.T. CREDIT CO. INC.—VISA, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Camden County

Decided March 6, 1998.

44

*Federman and Phelan, P.C.*, attorneys for plaintiff; *Rosmarie Diamond*, appearing.

*Angelini, Viniar & Freedman*, attorneys for defendant Heritage Square Association; *Barry W. Rosenberg*, appearing.

DAVIS, Theodore Z., P.J.Ch.

This matter has come to the attention of the court by way of plaintiff's complaint for foreclosure. An answer has been filed which challenges the priority of the lien of the plaintiff's first mortgage. The motion and cross-motion for summary judgment raise questions of priority because of the enactment of *N.J.S.A.* 46:8B–21, effective April 1, 1996, which creates a condominium association lien. These questions have not been addressed by any reported decision of the courts of this state, and are therefore of first impression.

The question presented is whether the condominium's lien, perfected after the effective date of April 1, 1996, has priority over a first mortgage recorded and perfected prior to the enactment of *N.J.S.A.* 46:8B–21.

### FACTUAL BACKGROUND

Neither party disputes the facts of this case. On April 30, 1992, Thomas Spina executed and delivered a purchase money mortgage on the property known as 131 Chelsea Circle, Clementon, New Jersey, in the amount of $55,800. The mortgage was recorded on May 4, 1992. Under the terms of the mortgage and promissory note, Spina agreed to pay Chase Manhattan Mortgage Corp. (Chase) $429.05 in monthly installments. The entire unpaid balance was to be due on May 1, 1999.

Monthly payments were not paid for the months of March and April 1997. The entire unpaid balance remains unpaid as of this date. The terms of the mortgage provide that upon default by the mortgagor, the remaining unpaid principal with all arrearage of interest and all advancements may become due immediately at the option of the mortgagee. Thomas Spina, the mortgagor in default, has not contested the foreclosure.

On February 18, 1997, pursuant to *N.J.S.A.* 46:8B–21, defendant Heritage Square Association recorded its association's lien for the amount of $623.40, representing 5 months of unpaid dues at

$116.00 per month plus interest, as well as the cost of the lien filing fee. This lien was filed and recorded in the County Clerk's office on July 22, 1997. On October 21, 1997, a subsequent Association lien in the amount of $962.30 was filed with and recorded by the County Clerk. It is undisputed by either party that *N.J.S.A.* 46:8B–21b(1) limits the priority of a condominium association lien to only six months of unpaid dues. The unpaid dues for the five month period is $580.

*N.J.S.A.* 46:8B–21 reads in pertinent parts as follows:

a. The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed the association, upon proper notice to the appropriate unit owner, together with interest thereon and, if authorized by the master deed or by-laws, late fees, fines and reasonable attorney's fees; provided however that an association shall not record a lien in which the unpaid assessment consists solely of late fees. Such lien shall be effective from and after the time of recording in the public records of the county in which the unit is located of a claim of lien stating the description of the unit, the name of the record owner, the amount due and payable when the claim of lien is recorded and shall be signed and verified by an officer or agent of the association. . . . .

b. A lien recorded pursuant to subsection a. of this section shall have a limited priority over prior recorded mortgages and other liens, other than liens for unpaid property taxes or federal taxes, to the extent provided in this subsection. This priority shall be limited as follows:

(1) To a lien which is the result of customary condominium assessments as defined herein, the amount of which shall not exceed the aggregate customary condominium assessment against the unit owner for the six-month period to the recording of the lien.

Both parties agree that the statute as amended and which created the priority has an effective date of April 1, 1996. They also agree that the Historical and Statutory note state that the amendment "shall not apply to or affect liens 'perfected prior to the effective date."

Chase argues that the statute cannot be applied retroactively as it would be a violation of the contracts clause of both the United States Constitution, *U.S. Const.* art. I, § 10, cl. 1, as well as the New Jersey Constitution, *N.J. Const.* Art. IV § 7 ¶ 3, as far as it impairs established bargained for property rights. Defendant Heritage Square Association argues that the statute applies pro-

spectively to condominium association liens only, so that all association liens recorded after the effective date will receive a first priority over a prior recorded mortgage, regardless of when the mortgage was recorded. In other words, the Association contends the Act is to be applied prospectively for the Association but retroactively against the first mortgagee.

## *ANALYSIS*

Summary judgment is appropriate under *R.* 4:46–2 where there are no genuine issues of material fact and the party is entitled to a judgment as a matter of law. The standard for granting or denying a motion for summary judgment is based on the existence of a prima facie case or defense so that the moving party will be entitled to a judgment as a matter of law where, on the full motion record, the adverse party has not adequately shown that, upon resolution of the dispute, judgment would be granted to that adverse party. *See, Rule* 4:46–2 (comment); *Brill v. Guardian Life Ins. Co. of America,* 142 *N.J.* 520, 666 *A.*2d 146 (1995). Because this matter solely revolves around the legal construction to be given to a statute and because there are no issues of fact to be resolved, the court may rule as a matter of law.

■ The first inquiry in any dispute over statutory interpretation is to look to the statutory provisions themselves. The legislature has spoken to the issue of which lien holder has priority in a foreclosure sale in *N.J.S.A.* 46:8B–21. This statute provides, in pertinent part, that a condominium association lien will have a limited priority over all other prior recorded mortgages and liens. The priority is limited to liens which are the result of customary condominium association assessments unpaid for a maximum of up to six months prior to the recording of the lien. Neither party to this case disputes that the liens at issue are valid nor that any statutory procedural requirement has not been fulfilled. At the heart of the issue in this case, then, is the application of the effective date of the statute.

It is well established that courts and legislatures are loath to apply the effect of a statute retroactively. In dealing with questions of statutory construction, courts have expressed this approach by stating that the terms of a statute "will not be given retroactive effect unless they are so clear, strong, and imperative that no other meaning can be annexed to them, or unless the intent of the legislature cannot otherwise be satisfied.'" *Rothman v. Rothman,* 65 *N.J.* 219, 224, 320 *A.*2d 496 (1974) (quoting *Kopczynski v. Camden County,* 2 *N.J.* 419, 424, 66 *A.*2d 882 (1949)); *See also, Berkley Condominium Ass'n, Inc. v. Berkley Condominium Residences, Inc.,* 185 *N.J.Super.* 313, 448 *A.*2d 510 (Ch.Div.1982). The present legislation explicitly establishes that this lien priority does not apply to or affect liens perfected prior to the effective date (April 1, 1996).

Chase argues that the use of the word "liens" indicates that it is ineffective as to *any* prior recorded lien and not specifically condominium association liens. Heritage Square Association, however, argues that the term "liens" was intended to apply only to condominium association liens perfected prior to the effective date. It also argues that the language of the legislature in this statute is clear and unambiguous and grants a limited priority to the condominium association over all prior recorded mortgages.

■ In support of its position, the Association cites the proposition that "there is a point in judicial construction of legislative intent beyond which a court should not go when asked to disregard plain and unambiguous statutory expression." *State v. Patfol, Inc.,* 76 *N.J.Super.* 572, 574, 185 *A.*2d 215 (App.Div.1962). This is certainly an appropriate expression of a court's duty in interpreting legislative intent, but seems to present greater support for Chase than for the Association. The pertinent language of *N.J.S.A.* 46:8B–21 provides that "[t]his act shall take effect on the first day of the third month next following enactment, and shall not apply to or affect liens perfected prior to the effective date." *N.J.S.A.* 46:8B–21. The word "lien" is a "generic" term that includes in its definition any "claim, encumbrance, or charge

on property for payment of some debt, obligation or duty" whether acquired by contract or by operation of law. BLACK'S LAW DICTIONARY 922 (6th ed.1990). By definition, the legislature's use of the word "lien" without any further specificity indicates a clear and unambiguous intent to apply the word to all liens, regardless of type, and which of necessity includes Chase's lien. Additionally, there exists no language which even suggests retroactive application to liens perfected prior to the enactment of this law.

The position of Chase is further supported by a long line of cases creating and protecting property interests. It is well established that a state, as an exercise of its police power, may enact statutes "to promote the public health, safety, morals or general welfare. Such a statute, because of retroactive application or otherwise, may diminish in value or totally destroy an individual's right, whether in property as such or arising out of contract, provided that the public interest to be promoted sufficiently outweighs in importance the private right which is impaired (citations omitted)." *Rothman*, 65 *N.J.* at 225–226, 320 *A*.2d 496; *Berkley*, 185 *N.J.Super.* at 321, 448 *A*.2d 510. This notion is supported by long established constitutional law principles that property interests are not created by the Constitution but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Ruckelshaus v. Monsanto Co.*, 467 *U.S.* 986, 1000, 104 *S.Ct.* 2862, 81 *L.Ed.*2d 815 (1984); *Board of Regents v. Roth*, 408 *U.S.* 564, 577, 92 *S.Ct.* 2701, 33 *L.Ed.*2d 548 (1972). States have given every indication that a vested property interest in mortgaged property has been granted to a mortgagee. New Jersey courts have defined a vested right as "a present fixed interest which ... should be protected against arbitrary state action." *Phillips v. Curiale*, 128 *N.J.* 608, 620, 608 *A*.2d 895 (1992) (quoting *Pennsylvania Greyhound Lines, Inc. v. Rosenthal*, 14 *N.J.* 372, 384, 102 *A*.2d 587 (1954)). The Courts of this state have declined to find a vested right "in the continued existence of a statute or rule of the common law which precludes its change or repeal."

*Phillips,* 128 *N.J.* at 620, 608 *A.2d* 895 (quoting *Savarese v. New Jersey Auto. Full Ins. Underwriting Ass'n,* 235 *N.J.Super.* 298, 309, 562 *A.2d* 239 (App.Div.1989); *Magierowski v. Buckley,* 39 *N.J.Super.* 534, 558, 121 *A.2d* 749 (App.Div.1956)). A "mere expectation" of the continuance of existing laws will not be enough. A vested right "must have become a title, legal or equitable, to the present or future enjoyment of property, or to the present or future enforcement of a demand, or a legal exemption from a demand made by another." *Levin v. Township of Livingston,* 62 *N.J.Super.* 395, 404, 163 *A.2d* 221 (1960), *aff'd in part, rev'd in part,* 35 *N.J.* 500, 173 *A.2d* 391 (1961).

Both state law and common law have established that a mortgagee maintains the absolute right to foreclose and accelerate against a defaulting mortgagor, so long as the alleged default is not attributable to the mortgagee's conduct. *See Gilbert v. Pennington Trap Rock Co.,* 135 *N.J.Eq.* 587, 39 *A.2d* 647 (1944) and *Scheibe v. Kennedy,* 64 *Wis.* 564, 25 *N.W.* 646 (1885). This right to foreclose is an equitable right inherent in the mortgage. *Id.* If the mortgagor fails to perform any condition or covenant of the mortgage, the mortgagee is authorized to require the payment of the entire mortgage debt so long as there is a provision to that effect set forth in the mortgage. *S.D. Walker, Inc. v. Brigantine Beach Hotel Corp.,* 44 *N.J.Super.* 193, 129 *A.2d* 758 (Ch.Div.1957). This is a right derived from the contract freely entered into by the mortgagor and the mortgagee. Such an acceleration clause is uniformly held to be a legitimate contract stipulation for credit on condition. *Pols v. The Strand of Atlantic City, Inc.,* 136 *N.J.Eq.* 1, 7, 39 *A.2d* 708 (Ch.1944).

Plaintiff has argued that applying the statute retroactively to the Spina mortgage would be violative of the Contract Clause of the United States Constitution which provides that "No state shall ... pass any ... [l]aw impairing the Obligation of Contracts." *U.S. Const.* art. I, § 10, cl. 1. Contract terms, both express and implied, governed by state law are protected by the Contract Clause. *Nieves v. Hess Oil Virgin Islands Corp.,* 819

*F.2d* 1237 (3rd Cir.1987). A change in the law by statute may trigger Contract Clause scrutiny if the change impairs the obligations of a pre-existing contract or otherwise alter the legal enforceability of a pre-existing contract. *General Motors Corp. v. Romein,* 503 *U.S.* 181, 182, 112 *S.Ct.* 1105, 117 *L.Ed.*2d 328 (1992); *United States Trust Co. of New York v. New Jersey,* 431 *U.S.* 1, 19, n. 17, 97 *S.Ct.* 1505, 52 *L.Ed.*2d 92 (1977). Additionally, it has been said:

> The obligations of a contract long have been regarded as including not only the express terms but also the contemporaneous state law pertaining to interpretation and enforcement. "This Court has said that 'the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.'" This principle presumes that contracting parties adopt the terms of their bargain in reliance on the law in effect at the time the agreement is reached. It is not always unconstitutional, however, for changes in statutory remedies to affect pre-existing contracts.

*United States Trust Co.,* 431 *U.S.* at 19, 97 S.Ct. 1505.

Here, Chase, as mortgagee, had a legitimate expectation that if Spina were to default, the property would revert to Chase unencumbered by liens other than those already given a priority by statute, such as taxes or municipal liens. As such, Chase had no occasion to consider, at the time of the bargain, the unanticipated additional liability or detriment to its lien arising from a possibility that Spina would also fail to pay condominium association liens. *See, e.g., General Motors Corp. v. Romein,* 503 *U.S.* 181, 112 *S.Ct.* 1105, 117 *L.Ed.*2d 328 (1992). On the other hand, Heritage Square Association claims to have relied upon the statute as granting a first priority over a prior mortgage to the condominium association for unpaid assessments dating back as far as six months. There is no reason to doubt that this reliance was legitimate on the part of the Association, but fairness dictates that this reliance give way to the expectations of Chase.

The statute, upon its effective date of April 1, 1996, granted a condominium association, for the first time, the right to a very limited priority over other liens, including mortgages filed prior to the association lien. For practical purposes, this was a newly

established property interest for the condominium association. The state-granted property interest relied upon by Chase, however, was one established long before any consideration was given to a condominium association lien. It necessarily follows, then, that at the time of the mortgage agreement in 1992, Chase could not have considered the possibility of a condominium association lien taking priority since the statute granting the association a priority was not enacted until almost four years later.

There is no doubt that the statute, as enacted, is a valid exercise of the state's police power and grants a property right to a condominium association in the form of a limited priority over other liens for up to six months of unpaid assessments. There is, however, nothing to support the contention that the legislature intended to encumber prior property interests by granting prospective application only to condominium association liens and retroactive application to all other mortgagees unfortunate enough to have recorded mortgages prior to the enactment of the statute without any consideration for an encumbrance of the type at issue here.

In conclusion, *N.J.S.A.* 46:8B–21 applies only prospectively to all liens and no priority is given under the statute to any lien, regardless of type, recorded and perfected prior to the effective date of the statute. Because of this, and because there are no issues of material fact, the mortgage executed and delivered by Thomas Spina to Chase is a first lien and has priority over the lien filed by Heritage Square Association for purposes of the foreclosure resulting from Spina's default. The motion for summary judgment by Chase is granted and the motion by Heritage is denied.

The parties have also filed cross-motions for the award of attorneys' fees pursuant to *R.* 4:46–6. The rule provides that an award of counsel fees may be granted, limited to the costs of the motion for summary judgment, where the contention is raised "in bad faith by the party opposing the motion with knowledge that it was a palpable sham or predicated on facts known or which should

have been known to be false." *R.* 4:46–6. The comment to *R.* 4:46–6 provides guidance as to when an award of attorneys' fees on summary judgment is appropriate, stating that:

It must be emphasized that it is not every unsuccessful summary judgment motion which will qualify as a trigger for application of the rule, but only those defeated by the opponent's abuse of fact known to him or which should be known to him. Thus, the rule is not intended to discourage the raising or developing of legal doctrine or to penalize litigants for a trial judge's legal error in erroneously denying summary judgment. Nor is it intended to discourage opposition to a summary judgment based on a legitimate factual controversy. The only situation intended to be addressed is that in which the opposing party fabricates or misrepresents what is in reality a non-existent factual dispute.

The comment further indicates that an award of attorneys' fees under the rule is warranted only where "a party believes that there is no genuine question of material fact and moves for judgment on that basis, and if the motion is defeated only because of the bad faith interposition of a palpably frivolous or sham factual contention, and if the matter actually is tried to conclusion." Thus, the only situation in which an award of attorneys' fees would be appropriate upon summary judgment is when the opposition was filed in bad faith and was detrimentally relied upon by the court and the parties.

There is no indication here that Heritage Square Association acted in bad faith in contesting the foreclosure by Chase. The question of the applicability of the effective date of *N.J.S.A.* 46:8B–21 was a valid question and the Association could have reasonably believed and operated upon the assumption that the statute was effective as to their lien on the Spina property. Counsel fees for the cost of this motion for summary judgment should not be awarded to Chase because the basis for the motion was a good faith reliance on a reasonable interpretation of a statute, yet to be judicially interpreted. Motion is denied.